## ELIPHALET ABBOTT *v.* VALENTINE WILMOT.

If a party release, by parol, a valid claim, which he has against another party, in consideration of the surrender of a claim which such other party makes against him, but which he is under no legal or moral obligation to pay, and no claim is afterwards made by either party for some years, nor until after controversy has arisen between them in respect to other matters, this will be held a valid accord, and the party cannot recover for the debt so released.

Interest is only recoverable as damages for the detention of money, which the party ought to pay, unless there is an express contract to pay interest.

When a party agrees to pay money after his return from a particular place, he is entitled to a reasonable time after his return, within which to make the payment.

When there is no express contract to pay interest, and the creditor receives the principal without making any claim for interest, his neglect to make such claim for some years, and until after controversy has arisen between the parties in respect to other matters, is sufficient evidence of a waiver of any claim, which he might have had for interest.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported the facts as follows.

The first charge in the plaintiff's account was for four oxen, sold to the defendant in December, 1847, which the auditor allowed at $165,00. The second charge was for interest upon a part of the price of the oxen, in reference to which it appeared, that the defendant purchased the oxen to drive to market, and paid $100 when he received them, and agreed to pay the residue of the price after his return from Brighton, and to leave the money with one Barnes. Soon after the defendant returned from Brighton, he called upon Barnes, in order to leave the money, but not finding him in a suitable condition to receive it, he did not leave it; but afterwards, in consequence of a message left at his house by the plaintiff, he left the money with one Howe for the plaintiff, and the plaintiff received it. This payment was made twenty eight days after the defendant's return from Brighton; the plaintiff made no claim upon the defendant for interest, and made no charge of it, until the time of the hearing before the auditor, which was Feb. 21, 1849. The auditor disallowed the charge. The third charge was

for " going to West Fairlee after sheep," fifty cents.   The plaintiff rendered the service at the request of the defendant, and the price charged was reasonable ; but in October, 1846, the defendant pur-chased of the plaintiff a heifer, to drive to market, and sold her for fifty cents less than the price he paid the plaintiff; the plaintiff did not send the heifer, to be sold on his account, nor did he agree to pay any loss, which the defendant, might sustain in selling her ; but the defendant, after his return from market, informed the plaintiff of the loss, and the plaintiff replied, " I will give you in going after the sheep to Fairlee, which is worth fifty cents."   The auditor dis-allowed this charge also.   The plaintiff's fourth charge was for in-terest on $500, forty days.   In 1844 the defendant purchased of the plaintiff cattle to drive to market, to the amount of about $1300, and at one time was owing the plaintiff $500, which he promised to pay after his return from Boston.   The defendant, twenty one days after his return, left the money at the plaintiff's house, and the plaintiff received it.   The plaintiff did not claim interest upon this sum, until the hearing before the auditor.   The defendant resided about nine miles from the plaintiff's house.   This charge, also, the auditor disallowed.   The defendant had paid to the plaintiff $165,00 for the oxen above mentioned, and that sum was charged in his ac-count.   At the commencement of the hearing before the auditor, the controversy between the parties was wholly in reference to the price, which the defendant was to pay for the oxen,—the plaintiff insisting, that the price was to be $175,00, and the defendant claim-ing, that it was to be $165,00.   After the testimony upon this point was closed, or nearly closed, the plaintiff entered upon his account the other charges above mentioned, and the defendant charged upon his account the loss upon the heifer above named, and some other charges, all of which were disallowed by the auditor.   The auditor reported, that there was nothing due to either party, and that the defendant should receive his costs.

The county court, June Term, 1849,—REDFIELD, J., presiding, —accepted the report and rendered judgment thereon for the defend-ant.   Exceptions by plaintiff.

*A. Howard, Jr.,* for plaintiff.

*Parker* for defendant.

The opinion of the court was delivered by

POLAND, J.　1. From the facts reported by the auditor it would seem sufficiently certain, that the plaintiff, in 1846, had a valid and legal claim against the defendant for the third item in his account, " for going to West Fairlee after sheep," amounting to the sum of fifty cents; and it does not appear, that this charge was ever paid, or adjusted, except as reported by the auditor, as follows ;—In the autumn of 1846 the defendant purchased a heifer of the plaintiff and drove to market and there sold her for fifty cents less than the price he paid the plaintiff.　On his return he made some complaint to the plaintiff on the subject, and the plaintiff then told him, that he would " give him in " the going after the sheep.　It does not appear, from any thing reported by the auditor, that the plaintiff was under any legal obligation to the defendant to make up any loss he sustained on the sale of the heifer, nor can we infer, that he was under any such moral obligation to do so, as would have furnished any consideration for an express promise to remunerate him for such loss.　But whether he was under any obligation, or not, either legal, or moral, he certainly had the right to do it, if he chose to do so voluntarily; and if he considered himself under a moral obligation to make it up to him, and did so, the law would not permit him to afterwards retract and recover back such payment.　The auditor does not find, in terms, that the defendant consented to accept the plaintiff's offer, to receive said fifty cents in satisfaction for his claim for loss on the heifer; but he reports, that no charge was made and no claim preferred afterwards, upon either side, until this controversy arose about the price of the oxen, and the charges were first made, upon both sides, at the trial before the auditor.　From these facts we think, the auditor was well warranted in finding, that there had been an accord of this item between the parties, and properly disallowed the same.

2. As to the charges for interest;—It seems, in both instances, the defendant had purchased the plaintiff's cattle to drive to market, and paid a part of the price before going to market, and was to pay the balance after his return from Boston.　In one instance he paid the money in twenty one days, and in the other in twenty eight days, after his return.　The defendant, we think, was entitled to a reasonable time after his return, in which to pay the money ; he

was not bound to go at all hazards, the day of his return, to the plaintiff's residence, which was several miles distant, to make payment of the money; and from any thing that is reported we cannot say, that the money was not paid in a reasonable time after his return. In one instance, it seems very clear, the defendant was in no fault for not making payment at an earlier day.

Here was no contract whatever to pay interest; and except where there is an express contract for interest, it is only recoverable as damages for the detention of the money, which the party ought to pay. In a case where a party is entitled to no interest by any contract, and afterwards receives his money without making any claim for interest, it is very difficult to see upon what ground he can afterwards make a claim for it. But even if he might have insisted upon having interest, it is manifest, that, his receiving his money without claiming it, and his subsequent silence for years, without making any charge or claim for it, furnishes ample evidence of a waiver of any claim, he might ever have had for it.

These charges, it seems, were first made and presented, after the evidence was closed on the main controversy between the parties. Charges made and presented under such circumstances ought not to be encouraged; and we think the auditor did " eminent justice " in disallowing them; and the judgment of the county court in accepting his report and rendering judgment for the defendant is affirmed.